UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TODD COLBURN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>)<br>Defendant. )<br>) | Civil Action Number<br>2:15-cv-1062-AKK |

## MEMORANDUM OPINION

Todd Colburn brings this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.   Procedural History

Colburn, who has past relevant work as a door technician and metal shop worker, (R. 19, 175), filed his application for Title XVI Supplemental Security Income on July 16, 2012 (R. 126), alleging a disability onset date of July 1, 2008,

1

*id.*, due to lower back problems and nerve damage in his legs, (R. 174). After the SSA denied his application on September 25, 2012 (R. 82), Colburn requested a hearing, (R. 95). At the time of the hearing on October 31, 2013, Colburn was 52 years old and had a high school equivalency degree. (R. 19). Colburn has not engaged in substantial gainful activity since his application date. (R. 14).

The ALJ denied Colburn's claim on March 6, 2014, (R. 9–21), which became the final decision of the Commissioner when the Appeals Council refused to grant review on May 7, 2015, (R. 1–3). Colburn then filed this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g), on June 24, 2015. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable

and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

5

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Colburn had not engaged in substantial gainful activity since his application date and therefore met Step One. (R. 14). Next, the ALJ acknowledged that Colburn's severe impairment of degenerative lumbar disc disease met Step Two. (*Id.*). The ALJ then proceeded to the next step and found that Colburn did not satisfy Step Three since he "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*) (internal citations omitted). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he then proceeded to Step Four where he determined that Colburn

> has the residual function capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.957(b) with the following

>limitations. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but cannot climb ladders, ropes, or scaffolds, or perform around work hazards.

(R. 16). In light of Colburn's RFC, the ALJ determined that Colburn "[was] unable to perform any past relevant work." (R. 19). Accordingly, the ALJ turned to Step Five, considering Colburn's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), and determined that "[Colburn] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 20). Because the ALJ answered Step Five in the negative, he determined that Colburn was not disabled. (*Id.*).

## V. Analysis

The court now turns to Colburn's contentions on appeal—i.e., that the ALJ failed to properly evaluate Colburn's credibility and posed an incomplete hypothetical to the VE. For the reasons stated below, the court finds that the ALJ applied the correct legal standards and his opinion is supported by substantial evidence.

### 1. *Alleged failure to properly evaluate Colburn's credibility*

Colburn asserts that the ALJ erred by improperly evaluating the evidence when the ALJ rejected Colburn's subjective pain testimony as not credible. Doc. 12 at 16. As it relates to pain testimony, where the ALJ discredits subjective testimony, he must "articulate explicit and express reasons for doing so." *Wilson v.*

*Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002). Moreover, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995). A failure to provide articulated reasons, however, requires that the testimony be accepted as true. *Wilson,* 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). As shown below, contrary to Colburn's contentions, the ALJ properly assessed Colburn's credibility.

Relevant here, the ALJ found that "[Colburn's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Colburn's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 17). The ALJ reached this conclusion based on his finding that the medical records did not support Colburn's subjective claims of the intensity of his lower back pain. (R. 18). Colburn challenges this finding based on his contention that the ALJ failed to account for the impact of poverty on Colburn's failure to seek medical treatment. Doc. 12 at 24. While Colburn is correct that the Eleventh Circuit recognizes poverty as a reason for non-compliance or a failure to seek treatment, *see Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) (holding that the Circuit "agree[d] with every circuit to consider the issue that 'poverty excuses noncompliance'."),

Colburn ignores that the ALJ's credibility determination was not based on a finding of noncompliance.

To the contrary, while the ALJ noted that Colburn did not make serious attempts to find treatment at a free clinic or charitable institution, the ALJ based his determination primarily on Colburn's daily living activities and recent physical examinations. (R. 18). More specifically, the ALJ first pointed to Colburn's July 2012 visit to the emergency room at Cooper Green Mercy Hospital for back pain treatment during which Colburn denied muscle and joint pain and had an unremarkable physical examination. (R. 17). Second, the ALJ cited the consultative physical examination done by Dr. Timothy Parish which found that "Although [Colburn] complained of back and leg pain, [he] ambulated to the examination room, sat comfortably, and was able to get on and off the examination table, all without any difficulty or complaints." (R. 18). Third, the ALJ pointed out that although Dr. Parish noted "chronic worsening lower back pain, L5-S1 laminectomy, radiculopathy, sciatica, and para-vertebral lumbar fibromyalgia, he made no indication these impairments would significantly limit or prevent [Colburn] from engaging in work activity." (*Id.*). Fourth, the ALJ cited the secondary review of the medical record conducted by Dr. Harold Ramsey, a disability specialist, that reflected that while Colburn's statements of the existence of pain were partially credible, Colburn's "statements in the ADLs of difficulty

9

lifting is out of proportion of the objective physical findings and other ADLs such as driving." (R. 282). Finally, the ALJ noted that Colburn's daily living activities were inconsistent with his claims of debilitating pain as Colburn and Dr. Parish both reported that he "is able to maintain personal hygiene and care independently, cook, perform household chores, drive, and shop." (R. 18).

Perhaps because Colburn cannot challenge the ALJ's reading of the medical record cited by the ALJ, Colburn disputes instead the weight afforded to Dr. Renee Philpot Bowen's assessment of Colburn's condition. According to Dr. Bowen, Colburn's x-rays show moderate degenerative changes in the lumbar spine and mild degenerative changes in the cervical spine. (R. 317). Based on this, Colburn contends that the medical record supports his pain testimony. The court disagrees and notes that the ALJ properly articulated his reasons for discrediting Dr. Bowen's assessment of Colburn's limitations—i.e., that Dr. Bowen is a chiropractor, and as such is not a licensed physician or acceptable medical source. (R. 18); *see also Miles v Soc. Sec. Admin., Comm'r*, 469 F. App'x 743 (11th Cir 2012) (ALJ has no duty to give significant weight to a chiropractor's opinion because for SSA purposes a chiropractor is not a proper medical source for SSA purposes); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155 (11th Cir. 2004) (same). The ALJ also noted that, while Dr. Bowen's x-rays were consistent with Colburn's limitations, in Dr. Bowen's functional assessment "it appears she relied

heavily on [Colburn's] subjective complaints as her treatment notes and x-rays of the cervical and lumbar spine do not show such limitations." (R. 18). Finally, the ALJ pointed out that other than noting that Colburn did not appear to be a "malingerer," Dr. Bowen's treatment notes show no objective review of Colburn's functional abilities. (R. 317–319). The ALJ's assessment of Dr. Bowen is, therefore, supported by the substantial evidence and the case law.

Colburn contends that the ALJ erred by failing to rely on the treatment notes from Dr. Scott Boswell, Colburn's pain management physician. Doc. 12 at 17. The record belies Colburn's contention, however, because other than stating that Colburn has bilateral sensory lower extremity motor neuropathy as the result of a 2008 nerve test, (R. 215), Dr. Boswell's treatment records are devoid of any opinion that he considered Colburn's pain disabling, (R. 207–240).

Based on the court's review of the record, it is readily apparent that the ALJ thoroughly recounted Colburn's medical records and pointed to various examples where the medical records belied Colburn's subjective testimony of the intensity and frequency of his pain. (R. 17–18). Accordingly, the court concludes that the ALJ clearly articulated his reasons for discrediting Colburn's pain testimony. *See Wilson v. Barnhart,* 284 F.3d at 1226 (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating in detail, the

contrary evidence as his reasons for doing so"). The court finds that substantial evidence supports the ALJ's decision.

   2.  *Alleged failure to pose a complete hypothetical to the VE*

As his final contention of alleged error, Colburn focuses on the ALJ's determination of his RFC, contending that the ALJ failed to provide a complete hypothetical to the VE. The "determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel,* 100 F. Supp. 2d 1323, 1330 (S.D. Ala. 2000); *see also Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). In order for the testimony of a VE to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d at 1227 . However, "the hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram*, 496 F.3d at 1270 (internal citations omitted).

In his hypothetical to the VE, the ALJ appropriately included Colburn's age, education, and past relevant work. The ALJ first described Colburn's background and limitations:

> [An] individual closely approaching advanced age with a high school equivalency education and work experience as both a door assembler and a metal fabrication shop helper. This individual has some mental impairments

>but they don't reduce any significant functional limitations. The individual also has some physical impairments and they do produce limitations.

(R. 47). The ALJ then provided the VE with five separate hypotheticals, each assuming a greater level of physical limitations due to disabling pain. (R. 48–49). This series of hypotheticals clearly contained Colburn's restrictions relating to his lumbar pain and were designed to elicit testimony as to whether jobs existed that Colburn could perform. Further, the VE sat through the entire hearing, and thus heard all of the testimony, including Colburn's testimony as to the intensity and duration of his pain. (R. 27). The VE then testified that given his physical restrictions, Colburn would not be able to return to his previous employment as a door assembler or metal fabrication shop helper. (R. 48). However, the VE also testified that even if Colburn is unable to perform jobs that required standing, such as laundry worker or housekeeping cleaner, based on Colburn's ability to sit or stand, light exertional jobs existed, such as cashier and ticket taker, which "could be performed either seated or standing, as required." (R. 53).

In short, the ALJ and VE clearly took into account Colburn's documented limitations in making an assessment of Colburn's ability to perform jobs that exist in the national economy. Therefore, substantial evidence supports the ALJ's assessment that Colburn was not disabled.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Colburn is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 26th day of February, 2016.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE